**James HAMILL, Plaintiff-Appellee,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant-Appellant.**

Court of Appeals of Tennessee,
Western Section.

July 27, 1972.
Certiorari Denied by Supreme Court
Dec. 18, 1972.

Spears, Moore, Rebman & Williams, Joseph C. Wilson, Chattanooga, for defendant-appellant.

Brown & Brown, Chattanooga, for plaintiff-appellee.

CARNEY, Presiding Judge.

Defendant below, Nationwide Mutual Insurance Company, has appealed from a

judgment of the Circuit Court of Hamilton County in favor of the plaintiff below, James Hamill, in the amount of $1,000.00. There was no jury.

Nationwide is the liability insurance carrier of the plaintiff, James Hamill, on a 1969 Ford Mustang automobile which was involved in a collision on May 14, 1970, on Interstate Highway No. I-124 in or near the City of Chattanooga, Tennessee. The suit is brought by Hamill against Nationwide under the "Uninsured Motorist Protection" provision of the liability policy.

Plaintiff Hamill contended that an unidentified hit-and-run motorist, "Jane Doe," was traveling southward on I-124 immediately to the right of the plaintiff; that another unidentified motorist came onto the interstate from Jane Doe's right; that Jane Doe then pulled her automobile negligently to the left and the left side of her automobile touched the right front fender of plaintiff's automobile causing plaintiff Hamill to careen to his left striking the guard rail to avoid a more serious accident with Jane Doe.

■ His Honor the Trial Judge found that Jane Doe was guilty of proximate negligence and that the plaintiff, James Hamill, was free from proximate contributory negligence. He also found that there was physical contact between the Hamill automobile and the Jane Doe automobile. The evidence does not preponderate against these findings by His Honor the Trial Judge and assignments of error I, II, and IV are respectfully overruled. T.C.A. Section 27-303.

The plaintiff testified that on the day following the accident he reported by telephone the accident to two different insurance carriers, namely, (1) he reported the accident to the American Road Insurance Company who carried the collision insurance on his automobile, and (2) he also reported to Mr. Joe Fox, agent for Nationwide Mutual Insurance Company, that he had had the collision.

Mr. Hamill testified that he had carried his liability insurance with Mr. Fox for a period of several years; that when he told Mr. Fox about the collision, Mr. Fox did not ask him for a statement or to come by and make a statement for the benefit of the insurance company but only asked him whether or not the guard rail was struck; that the conversation was very short. Mr. Fox, as a witness for defendant, admitted that he had carried plaintiff's liability coverage for several years but insisted that the first he knew that Mr. Hamill was involved in a collision was sometime in June after the accident happened in May when someone from the district office asked him about the loss. Plaintiff Hamill also testified that within a matter of some ten days he reached a settlement with his collision carrier and his automobile was repaired after it had been inspected by the adjuster for the collision carrier. Plaintiff contended that he had some personal injuries and was treated by his family physician, Dr. Hofmeister, on several occasions and that his final bill was $300.00.

On June 10, 1970, 27 days after the accident, plaintiff's attorneys wrote the following letter to the Claims Department of Nationwide advising Nationwide that plaintiff Hamill was making a claim for personal injuries under the hit-and-run provisions of the uninsured motorist coverage carried by Nationwide:

"June 10, 1970

Nationwide Insurance Company
5700 Building
Chattanooga, Tennessee

Re: James Hammill (sic)

Gentlemen:

Please be advised that this office has been retained by Mr. James Hammill regarding his claim under the uninsured

motorist's provisions of his policy, concerning the personal injuries sustained by him as a result of the accident of May 14, 1970, on Interstate Highway 124.

We shall be glad to discuss this matter, and as soon as all specials are in, we shall forward copies on to you in an effort to bring this matter to a satisfactory conclusion.

Very truly yours,

BROWN, BROWN & FRAZIER
/s/ H. E. Brown

By: Harold E. Brown

HEB/cjt"

On July 16, 1970, Mr. W. F. Jones, District Office Claims Manager of Nationwide, acknowledged receipt of plaintiff's claim by the following letter addressed to plaintiff's attorney, Mr. Harold Brown:

"P. O. Box 8145
Chattanooga, Tennessee 37411
July 16, 1970

Mr. Harold D. Brown
James Building
Chattanooga, Tennessee

Re: Our Policyholder: James S. Hamill
    Our Claim No.: 63–228–206
    Accident Date: May 14, 1970

Dear Mr. Brown:

Thank you for your letter of June 10, 1970 which was the first report we had of the above described accident.

I have left my number at your office several times, but have not heard from you. I need to get a recorded interview from our policyholder concerning the facts of this accident. I would appreciate your having him call me at 894–2883. I will be able to get the information I need by telephone. If you have any medical information on Mr. Hamill, I would appreciate your sending it to me.

Very truly yours,

/s/ W. F. Jones

W. F. Jones
District Office Claims Manager
NATIONWIDE MUTUAL INSURANCE COMPANY
WFJ/pd"

Assignments of error Nos. III, V, and VI are as follows:

"Error No. 3

The Court erred in finding that James Hamill gave written proof of claim, 'as soon as practicable.' "

"Error No. 5

The Court erred in finding that Attorney Brown's letter of June 10, 1970, was 'a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof . . .' "

"Error No. 6

The Court erred in finding that Nationwide's right to inspect the vehicle occupied by James Hamill at the time of the accident was not prejudiced by his repair of that automobile before notice of the claim was given to Nationwide."

We copy pertinent provisions of the "Public Liability" contract and the "Uninsured Motorist Endorsement" as follows:

(1) From the Public Liability Contract:

## "CONDITIONS

### "2. POLICYHOLDER'S DUTIES

The Policyholder or other person entitled to protection or someone on his behalf shall:

(a) give the Company or its agent written notice of all accidents, occurrences and losses as soon as practicable;

(b) notify the police of all theft losses;

(c) immediately deliver to the Company all papers in connection with any claims or suits; and

(d) assist the Company in all respects in connection with any claim or suit, including examination under oath concerning any claim and the exhibition and protection of any damaged property insured hereunder.

.   .   .   .   .   .

### "8. LIMITATIONS ON ACTIONS AGAINST AND OBLIGATIONS OF THE COMPANY

No action shall lie against the Company, under any of the coverages, unless, as a condition precedent thereto, there has been full compliance with all the terms of this policy, nor, as respects Coverages C(1), C(2) and E(1), until the amount of the obligation of the Policyholder or other person or organization entitled to protection shall have been finally determined by judgment after trial. Any person or organization, or the legal representative thereof, having secured such judgment, shall be entitled to recover under this policy to the extent of the insurance afforded. This policy shall not give any right to join the Company in any action to determine the liability of an insured person or organization. Bankruptcy or insolvency of an insured person, or his estate, or an insured organization shall not relieve the Company of any obligation.

The Company shall have no obligation to indemnify, pay to or on behalf of, or defend any person entitled to protection under this policy where such obligations or this policy provide the sole basis of jurisdiction of the court over said persons, such obligations, or this policy."

(2) From the Uninsured Motorist Endorsement:

## "II. DEFINITIONS

.   .   .   .   .   .

(d) 'hit-and-run automobile' means an automobile which causes bodily injury to an Insured arising out of physical contact of such automobile with the Insured or with an automobile which the Insured is occupying at the time of the accident, provided: (1) there cannot be ascertained the identity of either the operator or owner of such 'hit-and-run automobile'; (2) the Insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the Company within 30 days thereafter a statement under oath that the Insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (3) at the Company's request, the Insured or his legal representative makes available for inspection the automobile which the Insured was occupying at the time of the accident

.   .   .   .   .   .

"CONDITIONS

.    .    .    .    .    .

3. Proof of Claim; Medical Reports. As soon as practicable, the Insured or other person making claim shall give to the Company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. The Insured and every other person making claim hereunder shall submit to examinations under oath by any person named by the Company and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the Company unless the Company shall have failed to furnish such forms within 15 days after receiving notice of claim.

The injured person shall submit to physical examination by physicians selected by the Company when and as often as the Company may reasonably require. The injured person shall upon each request from the Company execute authorization to enable the Company to speak with any doctor who has treated such injured person, review any reports the doctor has written and examine all medical history pertaining to such injury no matter where or by whom such records have been made or maintained and to make copies, if desired. In the event of the injured person's incapacity or death his legal representative or the person or persons entitled to sue therefor, shall upon each request obtain the above stated medical information and make copies of such records, if desired. Failure to authorize such information when it is requested shall preclude recovery for such injuries under this coverage."

██  First, we notice that the uninsured motorist endorsement, subparagraph (d)(2), "Hit-and-run Automobile Provision," provided for a period of 30 days within which the plaintiff must file state-

ment under oath with Nationwide that he has a claim against the company. Plaintiff Hamill's attorney complied with this provision within the 30-day period except for the fact that his statement was not under oath. We hold that the letter was a substantial compliance with this provision even though it did not bear an oath. The District Claims Manager, Mr. Jones, acknowledged receipt of this notice of claim and made no objection to the fact that it was not under oath. Such act constituted a waiver on the part of Nationwide of the provision requiring the notice to be under oath.

We are cited to only one Tennessee case construing the hit-and-run automobile provision of the uninsured motorist endorsement to automobile liability policies: the case of Barfield v. Insurance Co. of North America, (1969), 59 Tenn.App. 631, 443 S. W.2d 482, opinion by Judge Puryear of this Court. In the Barfield case the policyholder had failed to notify a peace officer of the hit-and-run accident as provided by the hit-and-run provision of the policy, (d)(2) quoted above. This Court held that such failure was fatal to plaintiff's right to recovery because the policyholder had made no effort to comply with that provision of the policy and offered no reasonable explanation for his failure so to do. In the case at bar the plaintiff Hamill did report the accident to police within the 24-hour period and made a substantial effort to comply with the 30-day notice provision of the policy. Therefore, we hold that the Barfield case is not controlling of the case at bar.

As far back as 1857 our Tennessee Supreme Court held that a stipulation in an insurance policy that the affidavit of loss shall be made before the nearest magistrate is merely directory and cannot be construed as a condition precedent to the liability of the insurer. Aetna Insurance Co. v. Miers, (1857), 37 Tenn. 139.

In the case of Crumley v. Travelers Indemnity Co., (1972), Tenn., 475 S.W.2d

654, our Tennessee Supreme Court, speaking through Mr. Justice Humphreys, held that the insurance company impliedly waived "notice" or "permission to sue" provisions of the Uninsured Motorist contract when it took no action after being notified a week in advance of a scheduled trial date.

■ We find no merit in the insistence that the company was not given the opportunity to inspect the automobile in which insured was riding at the time of the accident. The District Claims Manager made no request to inspect the automobile nor do we see any prejudice to the appellant, Nationwide, from failure to inspect the automobile. The testimony of the Claims Manager for the collision insurance carrier was made available to the defendant-appellant.

Since the Uninsured Motorist Endorsement specified 30 days as the period for notice of claim and admittedly the plaintiff gave notice in writing within 27 days, and since no prejudice to Nationwide from lack of prior notice or notice under oath is shown, we hold that assignments of error Nos. V and VI must be respectfully overruled.

The appellant Nationwide contends very strongly that plaintiff's suit is barred for failure to give notice in writing "as soon as practicable" as required by paragraph 2 of Conditions of the Public Liability Contract copied above. Nationwide contends that the evidence preponderates against the finding of His Honor the Trial Judge that the plaintiff Hamill called Nationwide's agent, Mr. Fox, by telephone the day after the accident and that the insured Hamill did not give notice either verbally or in writing "as soon as practicable" after the accident as provided by subparagraph 2 of the Public Liability Contract quoted above.

Appellant Nationwide relies upon the case of Sohm v. U.S.F. & G., Sixth Circuit Court of Appeals of Tennessee, (1965), 352 F.2d 65. In the Sohm case, Dr. Sohm performed surgery on a patient on October 1, 1962, and discovered that in an earlier operation possibly he had been negligent and he so admitted to his patient. Dr. Sohm did not notify his malpractice liability insurance carrier of the possible claim against him until March 11, 1963, two days after he received a letter from the patient's attorney. Dr. Sohm's malpractice insurance policy required written notice as soon as practicable and Dr. Sohm offered no excuse or reasonable explanation for the delay. The Sixth Circuit Court of Appeals held that the delay in giving written notice was unreasonable and was a breach of the policy provisions which released the insurance company from liability.

We hold that the Sohm case is not controlling of the case at bar even if the plaintiff Hamill were required to furnish written notice "as soon as practicable" because of the difference in factual situation. So far as we have been able to ascertain there are no other reported Tennessee cases construing the provision of a policy requiring notice "as soon as practicable." We hold that the evidence does not preponderate against the finding of His Honor the Trial Judge that the plaintiff Hamill did in fact call Mr. Fox by telephone the day after the accident.

■ We also hold that such question is not determinative of the plaintiff's right to recover on this appeal because the provisions of the public liability policy requiring notice "as soon as practicable" and the provisions of the Uninsured Motorist Endorsement requiring notice within 30 days are contradictory and ambiguous. Under the very familiar rule that all ambiguities are to be construed most favorably to the insured, we hold that in the case at bar the plaintiff was entitled to rely upon the 30-day provision set out in the Uninsured Motorist Provision of the policy relating to hit-and-run automobiles copied above. Plaintiff's claim is based on the hit-and-run automobile provision of the Uninsured Motorist Endorsement and not on the Public Liability Contract.

As a general rule the provisions of a rider or endorsement on a policy of insurance will take precedence over the conflicting terms of the initial policy. See Le Blanc v. American Employers' Ins. Co., (1946, C.A. 5th), 155 F.2d 969, 48 A.L.R.2d 712. Assignment of error No. III is respectfully overruled.

The judgment of the lower Court is affirmed and the costs in the Court below and in this Court are taxed against the appellant.