**INA OF TEXAS, Appellant,**

v.

**R.D. LEONARD, Appellee.**

**No. 04–85–00162–CV.**

Court of Appeals of Texas,
San Antonio.

July 9, 1986.

Rehearing Denied Aug. 7, 1986.

Richard J. Reynolds, III, San Antonio, for appellant.

W. Burl Brock, San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

OPINION

DIAL, Justice.

R.D. Leonard, appellee, sustained a serious hand injury when he was shot while attempting to load a defective gun. The gun had recently been purchased at Mac's Gun Rack, an establishment owned by Arthur McClure. Leonard sued McClure seeking damages and McClure turned to

his insurance company INA, appellant in this case, to provide his defense. INA claimed that McClure's policy excluded "products and completed operations," the type of coverage which would have extended to the injury suffered by Leonard. Consequently, INA refused to defend McClure. McClure then retained his own counsel, and after a trial, judgment was rendered in favor of Leonard in the amount of $125,-000. Leonard took an assignment of interest from McClure to pursue any cause of action the latter might have against INA for its failure to defend. Leonard, as judgment creditor and assignee of McClure, brought this suit against INA.

The controversy centers around the effectiveness of subsequent endorsements and their relationship to the main policy and to each other. The primary question for our consideration is whether the endorsement included coverage for products and completed operations hazards. If so, INA would be required to pay the $125,000 judgment secured by Mr. Leonard against McClure.

The material background facts are as follows: For several years McClure had purchased insurance coverage for his gun shop from INA's agent, Eckhardt & Klier. These policies excluded products and completed operations coverage. Early in 1981 McClure sought to renew the insurance policy and was sent another policy which included TxMP 200, a broad liability endorsement, and TxMP 230, the completed operations and products hazard exclusion provision. That endorsement provided, "it is agreed that the insurance does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard." Approximately one month later McClure apparently requested increased coverage and the policy was changed by TxMP 202, the change endorsement. That provision stated:

In consideration of an additional premium of $366.00, it is understood and agreed TxMP–101 is hereby added to Loc 1 Bldg 1 Coverage A, Coverage b is hereby increased to $45,000 and TxMP 123 is hereby added. TxMP–202–Comprehensive General Liability is hereby added to Section II Endts 101, 123, 202 are attached.

Endorsement 202, the "Comprehensive General Liability Endorsement," provided as follows:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

Additionally, at the time these new endorsements were executed, no exclusionary endorsement was re-issued. Thus, the policy which was in effect at the time of the accident contained a broad "general liability" endorsement plus the exclusionary endorsement (TxMP 230). The question for our consideration, then, is to ascertain the effect of the later general liability endorsement (TxMP 202) on the earlier exclusionary endorsement (TxMP 230). INA claims that we must look at the policy as it existed in its entirety on the date of the incident, including all endorsements, and disregard the chronology of the subsequent endorsements. Leonard, on the other hand, claims that the later comprehensive general liability endorsement superseded the earlier exclusionary endorsement and urges a construction favoring the later TxMP 202 endorsement.

The trial court found that coverage did exist on the date of the accident and ordered that INA pay the $125,000 judgment to Mr. Leonard. In his Findings of Fact

and Conclusions of Law, the trial judge concluded that the subsequent endorsement changed the policy to provide the insured with broad liability coverage, including completed operations and products liability coverage. We agree with this finding. Well established principles of insurance and contract law required a finding that Endorsement 202 was in effect at the time of the accident and provided for the coverage at issue.

█ It is clearly the law in Texas that contract theory applies to the interpretation of insurance policies and such agreements should be construed accordingly. *General American Indemnity Co. v. Pepper,* 161 Tex. 263, 339 S.W.2d 660, 661 (1960). If a valid modification of an original contract has been made, the terms of the latest contract prevail if sufficient consideration has been exchanged. *National Farmers Organization v. Smith,* 526 S.W.2d 759, 765 (Tex.Civ.App.—Corpus Christi 1975, no writ). The findings of fact indicate that the later endorsements were added pursuant to extra premiums being paid by McClure and that they "changed" the policy. Since no challenge has been made to this finding, we assume that the modification was valid. *See also, Willeke v. Bailey,* 144 Tex. 157, 189 S.W.2d 477, 479 (1945); *Hall v. Professional Leasing Associates,* 550 S.W.2d 392, 394 (Tex.Civ. App.—Dallas 1977, no writ); *Ed Hoffman Motors v. G.F.C. Corp.,* 304 S.W.2d 216, 217–18 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.) (when two contracts between same parties are inconsistent, later one is conclusively presumed to supersede).

█ We agree with Leonard's claim that these cases provide persuasive authority for giving greater weight to the later endorsements. These decisions are based in large part on the premise that the modifications represented the latest expression of the parties' intent regarding their agreement and that they should therefore prevail. In the present case it is undisputed that the later endorsements were added *without* any exclusionary provision as had been the usual procedure in prior dealings between the parties. Additionally, the testimony suggested that TxMP 202 was customarily utilized to broaden coverage already existing under TxMP 200. Consequently, it is certainly reasonable to infer that the broad liability coverage was intended as an addition to the contract (since no exclusionary provision was re-issued) and should be given significant attention in our interpretation of the parties' agreement. We view the cases discussed above, when considered along with those specifically addressing insurance contracts, as persuasive authority for Leonard's claim that the policy included coverage for products and completed operations hazards.

While we found no Texas cases with facts similar to those we are faced with here, other jurisdictions have addressed similar cases. These courts have consistently held that subsequent conflicting endorsements supersede the master policies with which they conflict. For example, the Louisiana and New Mexico Supreme Courts held that subsequent conflicting insurance endorsements govern the interpretation of the entire contract if it is subject to more than one reasonable construction. *Farr v. Pacific Mutual Life Insurance Co.,* 200 So. 865, 867 (La.1941); *Ivy Nelson Grain Co. v. Commercial Union Insurance Co. of New York,* 80 N.M. 224, 453 P.2d 587, 589 (1969). Other appellate courts have followed this line of reasoning and have viewed later endorsements as controlling the interpretation of the contract when uncertainties exist. *See e.g., Truck Insurance Exchange v. Marks Rentals, Inc.,* 288 Md. 428, 418 A.2d 1187, 1191 (1980) (stated that later endorsement supersedes conflicting terms in policy when insurer responsible for drafting of instrument); *Hamill v. Nationwide Mutual Insurance Co.,* 499 S.W.2d 892, 898 (Tenn.App.1972) (stated that conflicting provisions of endorsement or rider take precedence over terms of initial policy); *see also,* J. APPLEMAN, 13A INSURANCE LAW AND PRACTICE §§ 7537, 7538 (rev. ed. 1976).

Although the cases cited above involved conflicts between the initial insurance *poli-*

*cy* and later endorsements, and the present case involves conflicting *endorsements,* we find that this distinction makes no difference. In fact, it may be viewed as strengthening a position favoring the later endorsement. A later provision which is held to supersede the master policy itself would, logically, also supersede an earlier endorsement which is in conflict, since the latter is merely a constituent part of the contract as a whole. This view is shared by Appleman's *Insurance Law and Practice* which states that when several riders or endorsements appear on an insurance policy, the *last* in point of time is controlling. J. APPLEMAN, 13A INSURANCE LAW AND PRACTICE § 7537 (rev. ed. 1976).

We recognize that INA disagrees with this interpretation and maintains that chronology is immaterial, advocating instead a strict "four-corners" approach to interpreting the insurance contract. However, the case upon which INA relies, *Government Employers Insurance Co. v. Lally,* 327 F.2d 568, 570 (4th Cir.1964), is distinguishable from the facts before us since the policy in the present case contains no specific language which limits the application of endorsements as was the case there.

We find that Texas insurance law is in harmony with the principals discussed above. It is settled law in Texas that we must construe insurance policies in favor of the insured when ambiguity exists, *Aetna Insurance Co. v. Houston Oil & Transportation Co.,* 49 F.2d 121, 123 (5th Cir. 1931), and we must strictly construe exceptions and words of limitation in favor of the insured. *Glover v. National Insurance Underwriters,* 545 S.W.2d 755, 761 (Tex. 1977). If there are repugnant conditions in a policy we must interpret the contract in favor of the insured to prevent forfeiture, defeat, or diminution of coverage if possible. *Haywood v. Grand Lodge of Texas K.P.,* 138 S.W. 1194, 1196 (Tex.Civ.App.—Galveston 1911, no writ). This holds true even if the insurer's position appears to be more reasonable than the one offered by the insured. *Glover v. National Insurance Underwriters,* 545 S.W.2d at 755; *see*

*also, Continental Casualty Co. v. Warren,* 152 Tex. 164, 254 S.W.2d 762, 763 (1953) (when language in policy is subject to more than one reasonable construction, court must apply interpretation which favors insured and permits recovery).

We agree with INA's position that a court must generally give effect to each provision of an insurance contract. However, the present case involves an unusual situation wherein the contract contains irreconcilable conflict. We must therefore apply the rules discussed above which require that we favor the insured and accept his interpretation of the contract provided it is reasonable. The position which Mr. Leonard has urged, favoring the broad liability coverage under TxMP 202, certainly meets this test. It is logical, fair, and supported by well established principals of contract and insurance law. We therefore conclude that TxMP 202 governs the interpretation of the policy and that the completed operations and products hazard coverage was effective on the date of Mr. Leonard's accident.

We hereby overrule INA's points of error and affirm the judgment of the trial court.