IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-10908
_____


LUBBOCK COUNTY HOSPITAL DISTRICT,
doing business as University
Medical Center,

                                        Plaintiff-Appellee,

                    versus

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA;
AIG AVIATION INSURANCE SERVICES;
CALEDONIAN INSURANCE GROUP, INC.,

                                        Defendants,

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA;
AIG AVIATION INSURANCE SERVICES,

                                        Defendants-Appellants.

_____

Appeal from the United States District Court for the
            Northern District of Texas
_____
                    June 24, 1998
Before JOLLY, WIENER, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

    In this appeal, we consider whether any of three endorsements to an aircraft liability insurance policy provides coverage for environmental damages resulting from a 1000-gallon fuel spill that would otherwise be excluded from coverage under the policy's pollution exclusion clauses.  The district court granted summary

judgment for the insured, finding coverage under two of the three endorsements. The insurer appealed. We ultimately find ourselves in disagreement with the district court's interpretation of the endorsements and, therefore, we must reverse.

I

In 1989, Carelink, an association formed between the appellee, University Medical Center ("UMC"), and Lubbock Methodist Hospital, entered into an agreement with Rocky Mountain Helicopters, Inc. ("Rocky Mountain") for emergency transport services. The agreement required Rocky Mountain to obtain aircraft hull insurance for the value of the helicopters to be used in providing those services and aircraft liability insurance for injuries to passengers or third parties and damage to property. Rocky Mountain obtained its aircraft liability insurance from the appellants, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and AIG Aviation Insurance Services (collectively, "National Union").

Rocky Mountain provided the emergency transport services through use of a helipad operated by UMC. UMC leased the property on which the helipad was located from Texas Tech University Health Sciences Center. During the term of the lease (including all times relevant to this case), UMC had sole responsibility to Texas Tech for operations and control of activities on the leased premises.

The leased premises included a refueling facility for helicopters operating out of the helipad.

On June 21, 1990, approximately 1000 gallons of fuel escaped from the fueling system at UMC's helipad. Thereafter, UMC sued Rocky Mountain to recover the costs of cleanup and monitoring. Rocky Mountain in turn referred the claim to National Union, which denied the claim but provided a defense, reserving the right to assert its policy defenses later. UMC obtained a jury verdict in state court against Rocky Mountain. The final judgment of nearly $500,000 was affirmed on appeal.

UMC then brought the instant action in Texas state court against National Union, seeking a declaration that the insurance policy it issued to Rocky Mountain covered the damages for the fuel spill. National Union removed the case to federal district court on the basis of diversity. It contested coverage on the basis of pollution exclusion clauses in the base policy. UMC argued that coverage was nonetheless available under three endorsements to the policy. Both parties filed motions for summary judgment. On June 12, 1997, the district court granted summary judgment for UMC, finding coverage under two endorsements to the policy. This appeal followed.

II

A

We review a grant of summary judgment *de novo*, applying the same standard used by the district court.  <u>Nautilus Ins. Co. v. Zamora</u>, 114 F.3d 536, 538 (5th Cir. 1997).  In deciding a motion for summary judgment, the court must determine whether any genuine issues of material fact exist and, if not, whether the moving party is entitled to judgment as a matter of law.  <u>Knight v. Sharif</u>, 875 F.2d 516, 522 (5th Cir. 1989).  The district court's interpretation of an insurance contract and its exclusions is a question of law and, thus, subject to *de novo* review.  <u>Zamora</u>, 114 F.3d at 538.

B

Neither party disputes that Texas law governs interpretation of the insurance policy at issue here.  Under Texas law, the maxims of contract interpretation regarding insurance policies operate squarely in favor of the insured, <u>National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Kasler Corp.</u>, 906 F.2d 196, 198 (5th Cir. 1990), "and especially so when dealing with exceptions and words of limitation," <u>Ramsay v. Maryland Am. Gen. Ins. Co.</u>, 533 S.W.2d 344, 349 (Tex. 1976).  If a policy provision is ambiguous, the court must adopt the insured's construction of the provision, "as long as that construction is not unreasonable, even if the construction urged by the insurer appears more reasonable or a more accurate reflection of the parties' intent."  <u>National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Hudson Energy Co.</u>, 811

4

S.W.2d 552, 555 (Tex. 1991).  If, however, the policy provision is susceptible of only one reasonable interpretation, the court must enforce the provision as written.  Id.

### III

National Union contends that pollution claim advanced by UMC is excluded from coverage under the policy based on its pollution exclusion clauses.  National Union argues that, under the base policy, potential coverage for UMC's claim would have to be found within "Coverage C" (covering liability for injury to persons or property arising out of the ownership, use, operation, or maintenance of Rocky Mountain's aircraft) or "Coverage E" (covering liability for injury to persons or property arising out of Rocky Mountain's operations).[1]  However, because the claim is based on

---

[1] Generally, the base policy created seven areas of coverage, Coverages A-G.  An endorsement to the policy, Endorsement # 11, created two additional areas of coverage, Coverages Y and Z.  The coverage areas at issue in this appeal, Coverages C and E, provide coverage, in relevant part, as follows:

Coverage C -   Aircraft Liability

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages . . . because of injury to property caused by an occurrence and arising out of the ownership, hire, lease, use, operation or maintenance of the aircraft specified in the Schedule of Insured Aircraft.

* * *

Coverage E -   Premises and General Liability

pollution not "caused by or resulting in a crash, fire, explosion or collision or a recorded in flight emergency causing abnormal aircraft operation," coverage under Coverage C is excluded under the policy. Similarly, because the claim is based on an escape of pollutants from a site on which Rocky Mountain was operating, coverage under Coverage E is excluded under the policy. UMC seems to accept that, for these reasons, it cannot successfully claim coverage under Coverage C or Coverage E.

UMC nevertheless claims coverage under three endorsements to the base policy. The district court agreed with UMC in part, finding coverage under two of the three endorsements--Endorsement # 10 and Endorsement # 11.[2] On appeal, National Union contends that neither of these endorsements cover UMC's claim. We consider each in turn.

A

_____

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages . . . because of injury to property, caused by an occurrence and arising out of premises or operations of the Named Insured at such premises, and including activities incidental thereto.

[2]Although UMC renews its argument that coverage exists under the third endorsement, Endorsement # 8, we agree with the district court that this claim has no merit warranting further discussion here.

We begin with Endorsement # 10.  Endorsement # 10 provides coverage for damages "resulting from [Rocky Mountain's] negligent operation, maintenance, or use of aircraft in 'air transportation,' as that term is defined in the Federal Aviation Act of 1958."  The language upon which we focus our analysis is the phrase "aircraft in 'air transportation.'"  The Federal Aviation Act defines air transportation to include "interstate air transportation."  49 U.S.C. § 40102(5).  The Act then further defines "interstate air transportation" as "the transportation of passengers or property by aircraft as a common carrier for compensation, or the transportation of mail by aircraft" between two or more states "when any part of the transportation is by aircraft."  49 U.S.C. § 40102(25).  Thus, it would appear that coverage under Endorsement # 10 requires both (1) negligent operation, maintenance, or use of an aircraft and (2) that such operation, maintenance, or use be in interstate air transportation.

(1)

National Union argues that coverage under Endorsement # 10 is unavailable because UMC's claim does not involve interstate air transportation.  First, National Union asserts that the claim is based on maintenance[3] performed in preparation for a flight

---

[3]Under Texas law, the term "maintenance" in insurance policies includes the act of refueling a vehicle or aircraft.  See, e.g., <u>Nationwide Property & Cas. Ins. Co v. McFarland</u>, 887 S.W.2d 487,

involving transportation of neither mail nor passengers or property for compensation.  Second, National Union points out that the flight in question did not, at any time, cross state lines, nor was it intended to.  We note that UMC has not challenged the district court's determination that the flight was not for compensation. Whether the flight could qualify as an *inter*state flight as opposed to an *intra*state flight is, therefore, irrelevant.  Because UMC's claim does not concern a flight for compensation or the transport of mail, it does not involve an aircraft in "air transportation" as that term is defined by the Federal Aviation Act.

UMC insists, however, that the coverage provision of Endorsement # 10 is ambiguous as to whether the "maintenance" of an aircraft must involve air transportation.[4]  UMC suggests that the provision can reasonably be interpreted to require air transportation only in connection with the "use" of an aircraft. Under this interpretation, the provision would cover (1) operation of aircraft, (2) maintenance of aircraft, and (3) use of aircraft in air transportation.  Thus, UMC argues, the fact that the flight

492-94 (Tex. App. 1994, writ denied).

[4]Maintenance, of course, rarely occurs in the actual course of air transportation.  National Union concedes, however, that if a loss occurs during air transportation as a result of prior maintenance, the loss would be covered under Endorsement # 10, regardless of when or where the maintenance was performed.

8

in question did not involve air transportation is immaterial to coverage.

This interpretation, UMC further contends, is consistent with "Exclusion (k)" to Endorsement # 10. Exclusion (k) excludes from coverage "[a]ny loss arising from operations other than the carriage by aircraft of persons or property as a common carrier for compensation or hire, or the carriage of mail by aircraft, in interstate, overseas, or foreign air transportation." If "air transportation" is interpreted to modify and thus apply to operations, maintenance, and use in the coverage provision, Exclusion (k) would be rendered superfluous because the "operations" covered by the endorsement would already be restricted to those involving air transportation. UMC argues that, under its interpretation, the exclusion serves a meaningful purpose, namely, exempting from coverage operations not involving air transportation. When the coverage provision is read together with Exclusion (k), Endorsement # 10 would apply to: (1) operations of aircraft in air transportation, (2) maintenance of aircraft, and (3) use of aircraft in air transportation.

The district court apparently agreed with UMC and adopted this interpretation of Endorsement # 10. Having found that UMC's claim did not involve interstate air transportation, the court nevertheless granted summary judgment because National Union had

9

failed to present sufficient evidence that UMC's claim did not involve "maintenance" of an aircraft under the endorsement.[5] The court's ruling in this respect indicates that it found coverage extending to maintenance of aircraft not in "air transportation."

(2)

We believe the district court erred in finding coverage under Endorsement # 10. Although UMC's interpretation adds meaning to the otherwise superfluous Exclusion (k), it does so only through an unreasonable reading of the coverage provision. Again, the coverage provision applies to the "operation, maintenance, or use of an aircraft in air transportation." UMC reads "in air transportation" to modify only the use of an aircraft, but reads "of an aircraft" to modify operation and maintenance as well as use.[6] Yet we fail to see how the phrase "of an aircraft" can be read to modify operation, maintenance, and use, while "in air transportation" be read to modify only use. The phrase "in air transportation" clearly modifies "of an aircraft" and, therefore, if the latter modifies each of the terms operation, maintenance, and use, it must do so together with the former. Inasmuch as UMC's

---

[5]See supra note 3.

[6]Of course, it must do so to avoid the patently unreasonable result that Endorsement # 10 covers operations and maintenance generally, that is, of any such activity without regard for the subject or nature of the activity.

10

interpretation impermissibly separates these phrases, it amounts to nothing less than a rewriting of otherwise unambiguous policy language.

Grammatical deficiencies aside, UMC's interpretation of the endorsement would result in coverage for all maintenance-related losses involving an aircraft, regardless whether the aircraft ever left the ground. It is improbable that Endorsement # 10, a standard, government-printed endorsement required by the Department of Transportation for all federally regulated air taxi operators, was intended to extend so far. Cf. Ridgeway v. Gulf Life Ins. Co., 578 F.2d 1026, 1031-32 (5th Cir. 1978) (refusing to give broad reading to standard endorsement required by state law). Indeed, UMC's interpretation makes a non-bargained-for, federally-mandated endorsement into a comprehensive general liability policy that effectively guts much of the base policy agreed upon by the parties. Although certainly a "possible" result, we refuse to torture the plain terms of the endorsement's coverage provision to reach what seems a more dubious result. Our task here is to determine the true intent of the parties as expressed in the terms of the policy, see National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995), not simply to seek out and credit any possible meaning those terms might bear.

In short, because we find UMC's interpretation of Endorsement # 10 unreasonable, we reject it.[7] We think that the endorsement unambiguously covers claims based on the negligent maintenance of aircraft only if they involve aircraft in "air transportation." UMC's claim does not involve air transportation and, therefore, is not covered by Endorsement # 10.

B

We next consider Endorsement # 11. Endorsement # 11 adds coverage for, among other things, property damage resulting from the operations of any contractor designated by Rocky Mountain under the endorsement. Specifically, it creates "Coverage Z," which provides coverage for:

> all sums which [Rocky Mountain] shall become legally obligated to pay as damages because of . . . property damage . . . caused by an occurrence and arising out of (1) operations performed for [Rocky Mountain] by the contractor designated in the Declarations . . . or (2) acts or omissions of [Rocky Mountain] in connection with [its] general supervision of such operations.

Coverage Z admittedly does not apply to UMC's claim. However, the endorsement also contains exclusions. With respect to pollution-

---

[7]We recognize that by rejecting UMC's interpretation and adopting National Union's, we must accept that Exclusion (k) merely restates in exclusionary terms what the coverage provision states in inclusionary terms. Although not a preferred result, it surely is not an uncommon one. Contracts do sometimes implement several provisions to restate in different ways a certain point--perhaps for emphasis. *In the absence of a reasonable alternative interpretation*, we read the coverage provision and Exclusion (k) to perform this function.

12

related claims, the exclusions state that "*[t]his policy* does not apply . . . to . . . property damage arising out of the . . . escape of . . . pollutants into or upon land, . . . but this exclusion does not apply if such . . . escape is sudden and accidental." (Emphasis added.) UMC produced sufficient summary judgment evidence to establish that its claim was based on a sudden and accidental escape of pollutants.

The district court found coverage based on its determination that Endorsement # 11's exclusions applied to the entire "policy" as opposed to merely the endorsement itself. To the extent this seemingly clear language could be construed as ambiguous, the court interpreted it against the insurer, National Union. The court recognized that Endorsement # 11 did not apply to this case because it covered only operations involving Rocky Mountain's contractor. The court concluded, however, that the base policy ultimately covered UMC's claim because the pollution exclusion contained in Endorsement # 11 amended the pollution exclusions in the base policy such that a sudden and accidental escape of pollutants was no longer excluded.

Although we agree in part with the district court's reasoning, we must ultimately reject it as applied to the endorsement language at issue here. The district court is correct that, under Texas law, broad endorsements may be construed to substantially alter the

13

terms of a base policy.  See, e.g., <u>INA of Texas v. R.D. Leonard</u>, 714 S.W.2d 414, 416-17 (Tex. App. 1986, writ refused n.r.e.).  And it is true that the exclusions to Endorsement # 11 purport to apply to the "policy," not simply the endorsement.  In deciphering the meaning of endorsements, however, we must be "particularly wary of isolating individual words, phrases, or clauses and reading them out of the context of the [policy] as a whole."  <u>Mustang Tractor & Equip. Co. v. Liberty Mut. Ins. Co.</u>, 76 F.3d 89, 91 (5th Cir. 1996) (citing <u>State Farm Life Ins. Co v. Beaston</u>, 907 S.W.2d 430, 433 (Tex. 1995)).  Specific provisions in the endorsement must be read in context with not only the base policy, but also the other provisions of the endorsement.

Examining the exclusions of Endorsement # 11 as a whole, it is clear to us that use of the phrase "[t]his policy" should not be construed as an attempt to have these exclusions apply to, and override the other provisions of, the base policy.  The phrase precedes each of the exclusions in the endorsement.  If, as UMC argues, the phrase extends the pollution exclusion contained in Endorsement # 11 to the coverage provisions of the base policy and not just to those of the endorsement itself, then so too must it extend the endorsement's other exclusions to the entire policy.  Thus, Exclusion (c) to Endorsement # 11, which excludes coverage for "property damage arising out of any act or omission by [Rocky

14

Mountain]," would apply to the base policy. So would Exclusion (f), which excludes coverage for "damage to . . . property used by [Rocky Mountain]."

We do not find this construction of Endorsement # 11 reasonable. Not only would it render nearly the entire base policy a nullity, but also would ultimately result in UMC's claim being excluded from coverage, despite falling within the exception of the endorsement's pollution exclusion. It is simply implausible to think that the parties intended the exclusions contained in the endorsement to eliminate most of the coverage provided under the base policy. Instead, we agree with National Union that the endorsement's exclusions apply only to the coverages provided by the endorsement. If the claim does not fall within the coverage provisions of the endorsement, its exclusions are irrelevant. Here, UMC's claim does not involve the operations of Rocky Mountain's contractors and, therefore, is not covered by Endorsement # 11. The endorsement's exclusions never come into play.

IV

In sum, UMC's claim is excluded from coverage under the pollution exclusion clauses of the base policy issued by National Union. Endorsements # 8, # 10, and # 11 cannot reasonably be

15

interpreted to cover the claim.  Accordingly, the judgment of the district court is

R E V E R S E D.