# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 23-50336

———————————

United States Court of Appeals
Fifth Circuit

**FILED**
April 26, 2024

Lyle W. Cayce
Clerk

Kinsale Insurance Company,

*Plaintiff—Appellant*,

*versus*

Flyin' Diesel Performance & Offroad, L.L.C.; Ross M. Dunagan, *doing business as* Airport Race Wars 2; Karla Martinez, *Individually and as husband and wife and as the natural parents and representative of* the Estate of Santiago Martinez; Francisco Gerardo Recio Palacios, *Individually and on behalf of the Estate of Rebecca Cedillo and their Surviving Natural Children*; Delia Jones, *Individually and as Next Friend of* J.D.J; Abel Martinez, Jr., *Individually and as husband and wife and as the natural parents and representative of* the Estate of Santiago Martinez; Chance Jones, *Individually and as Representative of* The Estate of D.I.T.J.; Mary Kate Walls, *Individually and as Next Friend of* G.M.J.,

*Defendants—Appellees*.

———————————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:22-CV-48

———————————————————————————

Before Higginbotham, Smith, and Higginson, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

A car careened off the raceway and collided with spectators at Race

No. 23-50336

Wars 2, a one-day amateur "no prep" drag racing event. Injured spectators, on their own behalf and on behalf of the estates of their deceased family members, sued Flyin' Diesel Performance & Offroad, L.L.C., the event's sponsor and organizer—which turned to its insurer, Kinsale Insurance Company, for legal defense. The parties dispute whether Kinsale owes a duty to defend.

The district court, after finding the commercial general liability insurance policy ambiguous, declared that Kinsale owed Flyin' Diesel a duty to defend. That was error. We reverse Flyin' Diesel's partial summary judgment and remand with directions to grant summary judgment to Kinsale.

I.

*A.    The Insurance Policy*

In preparation for Race Wars 2, Flyin' Diesel purchased a commercial general liability insurance policy from Kinsale ("CGL Policy").[1] The CGL Policy is comprised of three parts: (1) a commercial general liability declaration ("CGL Declaration"); (2) a commercial general liability coverage form ("CGL Form"); and (3) various endorsements ("CGL Endorsements").[2]

Section I of the CGL Form defines "Coverage A," which addresses bodily injury and property damage liability. That, in turn, contains an "Insuring Agreement" stating that Kinsale

> will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury" or "property
> damage" to which this insurance applies. We will have the
> right and duty to defend the insured against any "suit" seeking

---

[1] For readability, UPPERCASE text from the CGL Policy has been reproduced in sentence case throughout the opinion.

[2] There are sixty documents referenced in the "Exclusions and Endorsements" section of the CGL Declaration.

those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Each of the CGL Endorsements contains a header that states that "[t]his endorsement changes the policy. Please read it carefully." Additionally, at the end of each endorsement is the following statement: "All other terms and conditions of the policy remain unchanged" ("Footer Statement").

Of those CGL Endorsements, we highlight two:

*The first* is the "Coverage for Designated Events – Commercial General Liability" endorsement ("CDE Endorsement"). This endorsement "modifies insurance provided under the . . . commercial general liability coverage." It states that "[t]his insurance applies to 'bodily injury', 'property damage' or 'personal and advertising injury' arising out of the ownership, maintenance or use of premises for the designated event(s) in the above Schedule,[3] including any property located on these premises during the designated event(s)."

*The second* is the "Absolute Exclusion – Motorized Vehicles" endorsement ("MV Endorsement"). Like the CDE Endorsement, the MV Endorsement also "modifies insurance provided under the . . . commercial general liability coverage."

The MV Endorsement excludes coverage for "any claim or 'suit' for 'bodily injury,' 'property damage' or 'personal and advertising injury' aris-

_____

[3] "Schedule" refers to a table that lists the "Name of Event," "Dates of Event," and "Location(s) of Event" as "Race Wars 2," "10/23/2021," and "1994 Airport Loop, Kerrville, TX 78028," respectively.

ing directly or indirectly out of, related to, or, in any way involving the operation, maintenance, use, entrustment to others, or 'loading or unloading' of any motorized vehicle of any type." Additionally, the MV Endorsement stipulates that

> [t]his exclusion applies to any claim or "suit" regardless of whether any motorized vehicle is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage" or "personal and advertising injury" arises out of a chain of events that involves any motorized vehicle.[4]

## B.    *Collision and Underlying Litigation*

During Race Wars 2, an automobile driven by a participant departed from the raceway and careened into a spectator area and collided with spectators, seriously injuring some and killing others. Some of the injured parties ("Underlying Plaintiffs") sued Flyin' Diesel in Texas state court ("Underlying Litigation"). Flyin' Diesel tendered the Underlying Litigation to Kinsale, and Kinsale agreed to defend Flyin' Diesel subject to a complete reservation of its rights.

## C.    *Procedural History*

Kinsale sued in federal district court seeking a declaration of its rights under the policy. Specifically, it asked the court to declare that it has no obligation to defend or indemnify Flyin' Diesel in the Underlying Lawsuit. Kinsale and Flyin' Diesel filed cross-motions for summary judgment. The

---

[4] The MV Endorsement defines a "motorized vehicle" as "'autos', motorized bicycles, electric bicycles, All-Terrain Vehicles (ATVs), Utility Task Vehicles (UTVs); Golf carts, club carts/cars; 'Mobile equipment'; and Mopeds, motor scooters, electric scooters."

district court, after finding the CGL Policy ambiguous, declared that Kinsale owed Flyin' Diesel a duty to defend in the Underlying Litigation. Accordingly, the court granted in part and denied in part Flyin' Diesel's motion for summary judgment[5] and denied Kinsale's motion. Kinsale appeals.

## II.

### A. Texas Insurance Law

Kinsale's declaratory action arises under our diversity jurisdiction, *see* 28 U.S.C. § 1332(a)(1), and Texas law provides the applicable rule of decision, *see* 28 U.S.C. § 1652.

Under Texas law, "[i]nsurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally." *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam) (citations omitted). "The goal of contract construction is to ascertain the parties' intent as expressed in the language of the agreement." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022).[6] To that end, we must "first determine whether it is possible to enforce the contract as written." *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 257 (Tex. 2023) (cleaned up). Thus, the "analysis begins with the contract's express language." *Burlington Res. Oil & Gas Co. v. Tex. Crude Energy, LLC*, 573 S.W.3d 198, 203 (Tex. 2019) (citation omitted).

Two interpretative principles, routinely applied by Texas state courts,

---

[5] The district court did not make any declaration as to Kinsale's duty to indemnify Flyin' Diesel on the ground that the Underlying Lawsuit was still pending.

[6] But "if there are repugnant conditions in a policy, a court must interpret the contract in favor of the insured to prevent forfeiture, defeat, or diminution of coverage if possible." *INA of Tex. v. Leonard*, 714 S.W.2d 414, 417 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) (cleaned up).

guide our analysis of a contract's express language: *First*, a contract's terms must be given "their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Id.* (internal quotation marks and citation omitted). *Second*, we must "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* (internal quotation marks and citation omitted).

If its express language "lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law." *Mosaic*, 674 S.W.3d at 257 (internal quotation marks and citation omitted). But if the "language is subject to two or more reasonable interpretations after applying the pertinent rules of construction, it is ambiguous." *Id.* (cleaned up).[7]

Texas courts construe the meaning of an ambiguous insurance contract in favor of the insured. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991) (citations omitted). "In particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured." *Id.* (citations omitted). Accordingly, "we must adopt the construction urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660, 668 (Tex. 2008) (cleaned up).

---

[7] "Concluding that a legal instrument is insolubly ambiguous must always come *after* a court has exhausted all the traditional tools of interpretation and still cannot reach a definitive conclusion about the meaning conveyed by the text." *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 389 n.1 (Tex. 2023) (emphasis in original).

## B.     *The CGL Policy Is Not Ambiguous*

According to Flyin' Diesel, the CGL Policy is ambiguous because "[t]he presence of [the Footer Statement] in multiple endorsements creates a conflict amongst the endorsements and, therefore, an ambiguity in the policy." Specifically, it claims that any endorsement containing the Footer Statement necessarily "ignores and denies the existence of the other exclusionary endorsements." By Flyin' Diesel's reasoning, if there are two endorsements—both of which contain the Footer Statement—one of the endorsements "[must be] incorrect" because "[t]hey can't both truthfully state (a) that they change the policy; and (b) that all other terms of the policy remain the same."[8]

Kinsale disagrees and contends that "each endorsement must be read in conjunction with all other endorsements" such that each endorsement "provid[es] a condition to coverage provided under the CGL Form." Thus, "each endorsement" functions "as a separate, independent potential limitation on coverage."

Flyin' Diesel's construction of the Footer Statement is unreasonable, for it assumes that the CGL Endorsements modify a pre-existing construction of the CGL Policy. That assumption is erroneous for two reasons:

*First*, Flyin' Diesel misinterprets the term "policy" as used in the Footer Statement. Per Flyin' Diesel's reasoning, the CGL Form *is* the policy until the endorsements are interpreted and construed.[9] Then, once the first

---

[8] The district court largely adopted Flyin' Diesel's reasoning: "[I]f simultaneously created endorsements each state that all other terms and conditions of the policy remain unchanged, then an added coverage provision would be unchanged by an added exclusionary endorsement." *Kinsale Ins. Co. v. Flyin' Diesel Performance & Offroad, LLC*, No. 5:22-CV-0048, 2023 WL 2756988, at *11 (W.D. Tex. Mar. 31, 2023).

[9] Indeed, Flyin' Diesel's briefing repeatedly describes the endorsements as

endorsement is interpreted, Flyin' Diesel would construe the "policy" with that endorsement and the CGL Form, and so on.

But that cannot be, for "policy" is defined in the CGL Declaration as "[t]hese declarations, together with the common policy conditions and coverage form(s) and any endorsement(s)." The CGL Form is *one component* of the CGL Policy—it is not *the entire* CGL Policy. None of the CGL Endorsements modifies the "policy's" terms and conditions—for those endorsements already comprise the "terms and conditions of the policy." Consequently, Flyin' Diesel's reasoning fails under the express terms of the contract.

*Second*, and more fundamentally, Flyin' Diesel's assumption violates Texas's "long-established rule that no one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) (cleaned up).

Under its piecemeal approach to interpretation and construction, Flyin' Diesel fails to consider each part of the CGL Policy "with reference to the whole instrument as well as with reference to every other clause." *Wynnewood State Bank v. Embrey*, 451 S.W.2d 930, 932 (Tex. App.—Dallas 1970, writ ref'd n.r.e.) (cleaned up). Flyin' Diesel therefore "incorrectly g[ives] priority to a single section of the policy instead of considering the entire policy in its analysis." *Gastar Expl. Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W.3d 577, 588 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

## III.

Contrary to Flyin' Diesel's approach, we must construe every part of

---

"chang[ing] the policy."

the CGL Policy—the CGL Declaration, the CGL Form, and the CGL Endorsements—*simultaneously*. So construed, the CGL Policy is not ambiguous.

Begin by considering the relationship between the CGL Form and the CGL Endorsements. *Generalia specialibus non derogant*. Given that the CGL Form provides general statements regarding coverage, a CGL Endorsement's more specific statement regarding the same will control where the two conflict.

Take, for example, the CDE Endorsement and MV Endorsement: The CDE Endorsement qualifies coverage for three defined terms—"bodily injury," "property damage," and "personal and advertising injury"—to those "arising out of the ownership, maintenance or use of premises for the designated event(s) in the above Schedule." Designated events are identified in the Schedule by name, date, and location. The CDE Endorsement's coverage is a subset of the CGL Form's, so the two provisions potentially conflict. In the event of a conflict, though, the CDE Endorsement controls because it defines the scope of coverage with greater specificity.[10]

Same for the MV Endorsement. Its language excludes coverage for one particular cause of "bodily injury," "property damage," and "personal and advertising injury"—namely, motorized vehicles. That specific exclusion controls over the CGL Form where a conflict arises between the two provisions.

As the CDE Endorsement and MV Endorsement illustrate, the CGL Endorsements modify express subsets of provisions in the CGL Form. They

_____

[10] *See Forbau*, 876 S.W.2d at 133–34 ("[W]hen a contract provision makes a general statement of coverage, and another provision specifically states the time limit for such coverage, the more specific provision will control.") (citation omitted)).

do not, however, expressly purport to modify the CGL Declaration, other provisions in the CGL Form, or other CGL Endorsements. So, relative to the CGL Form, each of the CGL Endorsements addresses a narrower set of provisions in greater detail.

Given that structural context, the Footer Statement is best understood as the express invocation of the negative-implication canon. It merely states what is usually implied: That the modifications expressed in a given CGL Endorsement are the complete expression of *all* the modifications in that endorsement. In other words, the Footer Statement clarifies that an endorsement does only what it says.[11]

Only that interpretation of the Footer Statement allows us to "give effect to all the provisions of the contract so that none will be rendered meaningless." *Burlington*, 573 S.W.3d at 203 (internal quotation marks and citation omitted). So understood, the CDE Endorsement's Footer Statement can co-exist with the other CGL Endorsements in the CGL Policy. It is, therefore, the only reasonable interpretation.

## IV.

But assume, *arguendo*, that the CGL Policy is ambiguous. Even so, it does not necessarily follow that Kinsale owes a duty to defend. That is because Flyin' Diesel must still offer a reasonable construction of the CGL Policy that both "resolve[s] the uncertainty" it previously identified[12] and

---

[11] Nor would that interpretation render every Footer Statement in the CGL Policy meaningless surplusage. Context affects the strength of the negative-implication canon. The Footer Statement, by stipulating the canon's applicability, eliminates a step in the inferential process. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107–11 (2012).

[12] *Hudson Energy*, 811 S.W.2d at 555 (citations omitted); *see also ATOFINA*, 256 S.W.3d at 668 (adopting insured's construction of exclusionary clause "as long as that

covers the facts alleged in the Underlying Litigation.[13]

To that end, Flyin' Diesel offers two alternativee constructions of the policy: *Its first* construes the CDE Endorsement to "add[] coverage to the main body of the policy for, among other things, 'bodily injury' arising out of the Race Wars 2 event." *Its second* construes that same endorsement "merely [to] describe[] the Special Event that the policy was purchased to cover as described in the policy declarations."

Both proffered constructions eliminate all but one of the CGL Endorsements from the CGL Policy. Plainly, neither is a reasonable interpretation of the CGL Policy. Rendering large swaths of the contractual language "meaningless is, of course, an impermissible interpretation." *S. Farm Bureau Cas. Ins. Co. v. Adams*, 570 S.W.2d 567, 571 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.) (citing *Liberty Mut. Ins. Co. v. Am. Emps. Ins. Co.*, 556 S.W.2d 242 (Tex. 1977)) (cleaned up).

So, neither of Flyin' Diesel's proffered constructions is reasonable. Consequently, neither can be adopted as the controlling expression of the parties' intent—even if we assume, *arguendo*, that the CGL Policy is ambiguous. *See ATOFINA*, 256 S.W.3d at 668.

## V.

The express language of the CGL Policy, when properly interpreted and construed, "lends itself to a clear and definite legal meaning." *Mosaic*, 674 S.W.3d at 257 (cleaned up). Consequently, "the contract is not ambiguous and will be construed as a matter of law." *Id.* (internal quotation marks

—————————————

construction is not unreasonable" (internal quotation marks and citation omitted)).

[13] *See Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*, 75 F.4th 522, 528–29 (5th Cir. 2023).

and citation omitted).

Under Texas's eight-corners rule, "an insurer is not legally required to defend a suit against its insured" if the pleadings "do not allege facts within the scope of coverage." *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994) (cleaned up).

Neither Kinsale nor Flyin' Diesel disputes that the Underlying Plaintiffs allege that their injuries resulted from the collision.[14] That means the facts pled in the Underlying Litigation fall within the exclusions defined in the MV Endorsement, which states that the CGL Policy "does not apply to any claim or 'suit' . . . arising directly or indirectly out of . . . the operation . . . of any motorized vehicle of any type." The CGL Policy does not cover the Underlying Plaintiffs' claims. Consequently, Kinsale has no duty to defend because the Underlying Lawsuit does not "allege[] and seek[] damages for an event potentially covered by the policy." *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) (internal quotation marks and citation omitted).

## VI.

Finally, Flyin' Diesel asserts that the CGL Policy is illusory because "[t]he litany of exclusions . . . eliminate all coverage for potential liability to the defendants arising from the 'Race Wars 2' event."

Flyin' Diesel first takes aim at the "Exclusion – Athletic Participants" endorsement ("AP Endorsement"). That endorsement, it claims, "eliminate[s] any coverage for anything 'related to' [Race Wars 2] or anything that

---

[14] Indeed, Flyin' Diesel readily admits that the MV Endorsement "preclude[s] coverage for the injuries suffered by the Underlying Plaintiffs, as all such injuries occurred when a motorized vehicle crashed into a spectator area."

'arises out of a chain of events that includes' the Race Wars 2 event."

Kinsale disagrees, averring that the AP Endorsement excludes coverage only for injuries arising from, related to, or involving the "'preparation, practice or training for or participation in' Race Wars 2." Since "spectators are not 'preparing, practicing or training' for Race Wars 2" or "participating in the Race Wars 2," Kinsale avers that the AP Endorsement does not eliminate all coverage.

We agree with Kinsale. The AP Endorsement, standing alone, does not render the policy illusory. Texas courts are unlikely to deem an insurance policy illusory where that policy "will provide coverage for other claims." *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 515 (5th Cir. 2020) (cleaned up). The ordinary meaning of the AP Endorsement does not exclude from coverage spectators who merely attend—and do not participate in—Race Wars 2.

Flyin' Diesel then asserts that the combination of CGL Endorsements renders the CGL Policy illusory. Specifically, Flyin' Diesel points to the combination of the AP Endorsement, the MV Endorsement, and the endorsements entitled "Injury to Volunteers"; "Absolute Auto, Aircraft and Watercraft"; "Seating, Grandstands and Bleachers"; and "Traffic Control."

Flyin' Diesel's assertion is incorrect. Again, those endorsements do not appear to exclude coverage for all liability that could arise from Race Wars 2. For example, the policy still appears to cover spectators who slip and fall or who get food poisoning. Accordingly, there remain "various circumstances under which [the policy] would provide coverage," so the policy is not illusory. *Balfour Beatty Constr.*, 968 F.3d at 515.

Last, Flyin' Diesel claims that it purchased the policy for the purpose of "provid[ing] coverage for liability arising from Race Wars 2." But "[a]n

insurance policy is not illusory merely because it does not provide coverage for a claim the policyholder thought it would cover." *Balfour Beatty Constr.*, 968 F.3d at 515 (citation omitted). Texas courts "ascertain the true intentions of the parties as expressed in the writing itself," *Burlington*, 573 S.W.3d at 203 (cleaned up), so Flyin' Diesel's subjective expectations are of no moment.[15]

\* \* \* \* \*

In summary, the CGL Policy unambiguously excludes the Underlying Plaintiffs' claims from coverage. Kinsale is not obligated to defend Flyin' Diesel in the Underlying Litigation.

The partial summary judgment for Flyin' Diesel is REVERSED. The case is REMANDED with direction to grant summary judgment to Kinsale.

---

[15] "Objective manifestations of intent control, not what one side or the other alleges they intended to say but did not." *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763–64 (Tex. 2018) (cleaned up).