**COLONIAL PIPELINE COMPANY,
a Delaware Corporation**

v.

**NASHVILLE & EASTERN RAILROAD CORPORATION, a Tennessee Corporation.**

Court of Appeals of Tennessee,
at Nashville.

June 27, 2007 Session.

Sept. 26, 2007.

Application for Permission to Appeal
Denied by Supreme Court
March 3, 2008.

J.W. Luna and Jason D. Holleman, Nashville, Tennessee, for the appellant, Colonial Pipeline Company.

David W. Lawrence, Lebanon, Tennessee, for the appellee, Nashville & Eastern Railroad Corporation.

## OPINION

DAVID R. FARMER, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J. and FRANK G. CLEMENT, JR., J., joined.

This appeal arises from a contract dispute between a railroad and pipeline company over pipeline relocation costs. The parties entered into a license agreement allowing the pipeline company to install, operate, and maintain its pipeline under real property owned by the railroad. The railroad constructed new, mainline track that necessitated the pipeline's relocation. In a breach of contract action filed by the pipeline company to recover its relocation costs, the trial court granted summary judgment for the railroad, ruling that the contract did not restrict the railroad from installing the new track as it did. Finding that the license agreement prohibited the railroad from constructing new track both over and along existing pipeline, we affirm in part, reverse in part, and remand for an award of damages and entry of judgment in favor of the pipeline company.

This appeal involves a dispute over a license agreement executed in 1963 between Colonial Pipeline Company ("Colonial") and the Nashville & Eastern Railroad Corporation's ("N & E" or "the Railroad") predecessor-in-interest, Tennessee Railway Company. The license agreement included the terms by which Colonial could maintain its liquid petroleum pipelines under real property held and used by the Railroad.

On September 27, 2004, N & E notified Colonial in writing that it would need to relocate a section of its pipeline so that N & E could upgrade and lay new track on the property to accommodate commuter rail service. Colonial sought reimbursement for its $750,000 of relocation costs, but N & E refused its request. Colonial filed a breach of contract action against N & E on October 4, 2005, to recover the relocation costs. Colonial asserted that N & E had breached the contract by placing track over and along existing pipeline, in direct contravention of the first paragraph of their license agreement. The first paragraph of the contract provided that:

> [N & E] hereby grants a license to [Colonial] for the right to construct, maintain, inspect, operate, protect, replace, repair, and remove a pipeline for the transportation of liquid petroleum products, so long as such rights are used by [Colonial] for the purpose of constructing, maintaining and operating pipeline, it being understood and agreed that [N & E] reserves the right to place along, across, and over said pipeline facilities and structures, roads, electric light and power lines, water lines, sewer

lines, gas lines, telephone poles and telephone lines, railroad spurs and any and all other utilities which may be desired; provided however, that if the same is placed along, as distinguished from across the pipeline they shall not be placed directly over it. It being further understood that the Tennessee Central Railway Company will notify [Colonial] in writing at least 90 days prior to constructing any railroad spurs over the pipeline, in order that [Colonial] may take adequate measures to protect [its] pipeline.

N & E filed an answer and counterclaim on December 1, 2005, denying Colonial's breach of contract allegations and seeking attorney's fees and other litigation costs under an indemnification provision in their agreement. N & E contended that paragraph eight of the agreement controlled the dispute. That section provided as follows:

[Colonial], at its sole cost and expense, shall relocate or adjust its pipeline, at each said location, to any physical change as made at any time in [N & E's] property and [Colonial] insures all liability for any damages to the pipeline and contents thereof, due to such relocation or adjustments.

N & E asserted that its letter of September 27, 2004, satisfied the only requirement imposed by the license agreement, which was the ninety-day notification provision in paragraph one. It further contended, in pertinent part, that paragraph ten of the agreement supported its counterclaim for attorney's fees and court costs. That section required Colonial to "indemnify and save harmless" N & E "from and against all claims, suits, damage, cost-including attorney's fees, losses, and expenses, in any manner resulting from or arising out of the construction,

maintenance, renewal, repair, use or existence of the pipeline."

The parties filed cross-motions for summary judgment. Colonial's statement of undisputed material facts included a statement that N & E "notified Colonial that [it] intended to construct a railroad spur on the property [at issue]." N & E did not dispute this statement in its response. It also conceded that the location of the new track for the commuter system would span the area over and along the existing pipeline, thus requiring its relocation. The trial court heard argument on the parties' cross motions on May 26, 2006. Colonial argued that paragraph one of the agreement controlled the matter and that N & E was obligated to reimburse the costs because it had constructed a "railroad spur" in violation of the agreement. N & E, on the other hand, asserted that paragraph eight required Colonial to bear its own relocation costs. It also relied on the indemnity and waiver provisions in asserting its entitlement to attorney's fees and court costs.

The trial court entered an order on July 10, 2006, partially granting N & E's motion for summary judgment and finding that paragraph eight controlled the dispute, thus requiring Colonial to bear its own relocation costs. In particular, it acknowledged that the defendant had stipulated to the "railroad spur" issue but ruled that the new track did not constitute a "railroad spur" as contemplated by the contract. In the absence of a definition within the text of the contract, the court consulted case law and dictionaries, including Black's Law Dictionary, which defined a spur as "a short track leading from a line of railway and connected with it at one end only, and not an adjunct usual or necessary to the operation of main line trains and cars." Moreover, the court ruled that paragraph one addressed only utilities and

other matters ancillary to the main system. It concluded that new track for the commuter rail service was not ancillary to the system and thus fell outside the scope of paragraph one. Further, the trial court found that Colonial's interpretation of the contract would result in an expansion of rights beyond the limited license contemplated by the parties. The court stated its reasoning succinctly:

> [W]hat is in issue in this case is not ancillary or merely a utility to the Railroad. The track involved in this case is new, additional track, spanning a significant length of the pipeline and comprising a part of the railway system. A provision on utilities can not be the operative provision for the expansion of the railway system itself. The prohibition in paragraph one preventing the Railroad from locating new track in the area both alongside and over the pipeline, if applied outside of utilities and ancillary track, would curtail and prohibit expansion of the Railroad's system, thereby granting a much broader property right to the pipeline than the "License" referred to in the Agreement.

The trial court found that the matter of the relocation costs instead came within the provisions of paragraph eight. On appeal, Colonial argues that it was error for the trial court to disregard a stipulation to this effect and that, in any event, the terms "facilities and structures" would also include mainline track.

The trial court granted Colonial's motion for summary judgment on the issue of N & E's claim for attorney's fees and litigation costs. It ruled that the indemnity and hold harmless provisions applied only to claims brought by third parties, not to disputes between the contracting parties. Colonial then filed its notice of appeal on August 9, 2006.

## Issues Presented and Standard of Review

Colonial presents the following issues for review:

(1) Did the trial court err by assigning a meaning to the term "railroad spur" in the subject 1963 easement agreement between the parties different from the meaning stipulated by the parties for purposes of summary judgment?

(2) Did the trial court err by not considering the meaning of the terms "facilities" and "structures" in the subject ... agreement between the parties for purposes of summary judgment?

(3) Did the trial court err by not finding that [N & E] breached the subject ... agreement by demanding to construct additional rail track "along and directly over" [Colonial's] existing liquid petroleum pipeline?

N & E, on the other hand, raises an additional issue:

(1) [Did] the trial court [err by] denying [N & E] attorney's fees and expenses, pursuant to the indemnification provisions of the agreement between it and [Colonial]?

■ Our standard of review of a trial court sitting without a jury is *de novo* upon the record. *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn.1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn. R.App. P. 13(d). Thus, we may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo,* with no presumption of correctness. Tenn. R.App. P. 13(d); *Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn.2000).

Colonial appeals the trial court's award of summary judgment in favor of the Railroad. Summary judgment is proper where the resolution of legal issues will dispose of the case. *See Fruge v. Doe,* 952 S.W.2d 408, 410 (Tenn.1997); *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993); *Pendleton v. Mills,* 73 S.W.3d 115, 121 (Tenn.Ct. App.2001). The central issue on appeal involves contract interpretation, which is a matter of law that we review *de novo* on the record with no presumption of correctness for the determination of the trial court. *Barnes v. Barnes,* 193 S.W.3d 495, 498 (Tenn.2006). The "cardinal rule" of contract construction is to ascertain the intent of the parties and to effectuate that intent consistent with applicable legal principles. *Frizzell Constr. Co. v. Gatlinburg, L.L.C.,* 9 S.W.3d 79, 85 (Tenn.1999). When the language of the contract is plain and unambiguous, courts determine the intentions of the parties from the four corners of the contract, interpreting and enforcing it as written. *Int'l Flight Ctr. v. City of Murfreesboro,* 45 S.W.3d 565, 570 (Tenn.Ct.App.2000).

### Analysis

### Paragraph One

The pivotal question on appeal, as we perceive it, is whether paragraph one of the license agreement prohibits N & E from laying mainline track along and over existing pipeline. We believe it does. Paragraph one contains language that reserves N & E's right to place certain items on the real property at issue. It lists the relevant items in the following provision:

> [N & E] reserves the right to place along, across, and over said pipeline facilities and structures, roads, electric light and power lines, water lines, sewer lines, gas lines, telephone poles and telephone lines, railroad spurs and any and all other utilities which may be desired[.]

The agreement also limits this reservation of rights in the independent clause that follows the list

> provided however, that if the same is placed along, as distinguished from across the pipeline they shall not be placed directly over it.

This "placement prohibition" limits the Railroad's reservation of rights. Thereafter, the paragraph includes a notice provision requiring the Railroad to notify Colonial of its intent to construct a railroad spur over the pipeline:

> [N & E] will notify [Colonial] in writing at least 90 days prior to constructing any railroad spurs over the pipeline, in order that [Colonial] may take adequate measures to protect [its] pipeline.

Colonial asserts that the trackage comes within the list of terms in paragraph one and that the placement prohibition applies to all items in the list. It first argues that the track is a "railroad spur," as stipulated by the parties and erroneously ignored by the trial court. It alternatively contends that even if the trackage is not a "railroad spur," it comes within the scope of the terms "facilities and structures" and is likewise subject to the placement prohibition.

N & E sets forth two arguments in support of its assertion that paragraph one does not address new, mainline track. It first contends that the placement prohibition applies only to certain utilities, not railroad spurs or anything else of the sort. Second, it asserts that the terms "facilities and structures" are not even in the list of items.

### Railroad Spur

Although N & E argues otherwise, the placement of a railroad spur both along and directly over the pipeline constitutes a breach of the license agreement.

The Railroad contends that the placement prohibition applies solely to utilities for two reasons: first, because its restrictive language modifies only the last term in the list, and, second, because the notification provision contemplates the placement of a railroad spur over the pipeline. We find this line of argument unpersuasive.

The Railroad's first argument requires this Court to identify the intended antecedent of the term "the same" in the placement prohibition. N & E asserts that the antecedent is the last term in the list, or "any and all other utilities which may be desired." A plain reading of the list in conjunction with the term "*other* utilities" reveals that this catchall term would exclude utilities such as electricity, water, sewer, gas, and telephone. We find it unlikely that the parties intended to restrict the placement of such a narrow and indefinable class of utilities. The more reasonable construction of this language is that "the same" refers to the entire list of items in the preceding provision. It is obvious that the placement of any of these items over and along the pipeline would, at a minimum, encumber Colonial's access to the pipeline for repair and maintenance.

N & E further contends that this interpretation robs the notification provision of any meaning. It reasons that if railroad spurs were subject to the placement prohibition, then the notification requirement would not provide for placement of the spur "over" the pipeline. The Railroad incorrectly presumes that placement "over" the pipeline is the very violation set out in the placement prohibition. The prohibition involves more than placement "over" the pipeline: a violation occurs when the Railroad places items both along and directly over it.

Our interpretation of this prohibition does not preclude the construction of a railroad spur over the pipeline. The license agreement allows for its placement over the pipeline, at the point of intersection where the track crosses over pipeline below it. Such placement implicates the need for pipeline reinforcement so as to accommodate the additional weight of trains passing over it. The contract provides ninety days, through the notice provision, for Colonial to accomplish these reinforcements or to pursue other, protective measures. There is a manifest difference between this scenario and one in which the Railroad constructs a spur both over and along the pipeline so that the track extends parallel to and directly over the pipeline. The prohibition speaks to the latter placement, not the former. For this reason, we remain unpersuaded by the Railroad's argument.

The parties make much of whether the new track is a "railroad spur" as contemplated by the contract and whether the trial court properly ignored the stipulation of the parties. In our estimation, however, this determination is irrelevant given that the broad language of the provision otherwise includes what was actually constructed by N & E. Even assuming that the trial court was correct to ignore the stipulation and rule that the track was not a "railroad spur" under the contract, paragraph one still applies to the new track placed over and along the former location of the pipeline under the term "structure."

### Facilities and Structures

█ The breadth of the term "structure" is obvious. Webster's Dictionary defines it, in pertinent part, as "something ... that is constructed" and "something arranged in a definite pattern of organization." Webster's Ninth New Collegiate Dictionary 1169 (1991). Colonial also cites to case law referring to railroad tracks as "structures." *See, e.g., City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 586

(6th Cir.2001); *Ill. Cent. Gulf R.R. Co. v. Tenn. Pub. Serv. Comm'n,* 736 S.W.2d 112, 116 (Tenn.Ct.App.1987). New track constructed by the Railroad is a "structure."

N & E argues that "facilities" and "structures" are not part of the list of items but are instead a continuation of the term "pipeline." According to N & E, then, this Court should read the provision as reserving the right to place "roads, electric light and power lines, water lines, sewer lines, gas lines, telephone poles and telephone lines, railroad spurs and any and all other utilities which may be desired" over, across, and along the *pipeline facilities and structures.* We decline to adopt this formulation for the following reasons.

First, the Railroad relies on the absence of a comma between "pipeline" and "facilities and structures" as proof that the words form one term. Yet, N & E neglects to account for the grammatical error its interpretation produces. Under the Railroad's formulation, the provision would *begin* a list of terms with a comma which, in general, is grammatically incorrect.[1] Second, the pertinent portion of paragraph one refers to the "pipeline," not "pipeline facilities and structures," at least three times. If the relevant terminology were "pipeline facilities and structures," we believe the parties would have used it more than once in the paragraph.

We interpret paragraph one as reserving the Railroad's right to place facilities and structures, utilities, roads, and railroad spurs on the real property in question. In light of this broad and inclusive language pertaining to the Railroad's res-

ervation of rights, we read paragraph one as focusing more on *where* the railroad places new structures than on *what* it places there. The provision allows the railroad to place these items along, across, and over the pipeline but specifically disallows the placement of them both along and directly over it. The logical inference is that the effect of new construction upon the pipeline and Colonial's access to it drives this exception to the reservation of rights. We concluded above that the placement of a railroad spur along and directly over the pipeline constitutes a breach of the license of agreement. The placement of new track encumbers Colonial's access to the pipeline in the same fashion. Thus, even if a section of new track is not a "railroad spur" as intended by the contract, it still constitutes a "structure" and is subject to the placement prohibition set forth in paragraph one. We accordingly hold that N & E breached this provision of the license agreement.

### Paragraph Eight

■■■ The trial court ruled that paragraph eight controlled the instant dispute. The Railroad emphasizes on appeal that this paragraph is the only one of the two at issue that addresses payment for relocation costs. It contends the trial court's conclusion was correct. The paragraph places, in general terms, the burden of relocation costs on Colonial when physical changes in the property require relocation:

> [Colonial], at its sole cost and expense, shall relocate or adjust its pipeline, at each said location, to any physical

---

1. Compare two examples of a hypothetical contractual provision reserving the right to purchase office supplies for a company. The following formulation is grammatically analogous to the wording of the license agreement: "We reserve the right to purchase for the company paper, scissors, and staplers." According to the Railroad's line of reasoning, the absence of comma between "company" and "paper" requires us to treat the words as one term; therefore, so the argument goes, the contracting party is reserving the right to purchase scissors and staplers for the company paper. Yet, if we insert a comma as the Railroad suggests would be proper, we have produced a grammatical error: "We reserve the right to purchase for the company, paper, scissors, and staplers."

change as made at any time in [N & E's] property and [Colonial] assumes all liability for any damages to the pipeline and contents thereof, due to such relocation or adjustments.

Although paragraph one and paragraph eight arguably apply to the facts at bar, the specificity of the placement prohibition brings a breach of this nature outside the provisions of paragraph eight. As a general rule, where both general and special provisions relating to the same thing exist in a contract, the special provisions ordinarily control. *Cocke County Bd. of Hwy. Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn.1985); *Davidson v. Davidson*, 916 S.W.2d 918, 923 (Tenn.Ct. App.1995). N & E asserts that this paragraph requires Colonial to bear the costs of relocation whenever the Railroad makes any physical change in the property, at any time. This may be so, but paragraph one specifically prohibits the Railroad from placing new construction both along and directly over the pipeline. We cannot agree that this paragraph requires Colonial to absorb relocation costs resulting from the Railroad's violation of this specific provision. Even assuming that paragraph eight generally requires Colonial to bear its own relocation costs, it does not apply to cases where the Railroad commences new construction in violation of the agreement and thereby becomes liable for breach of contract damages.

Contrary to the trial court's reasoning and to the arguments advanced by the Railroad, we do not view this interpretation as expanding Colonial's contract rights under the license agreement into a property right. So long as this license agreement remains in effect, the placement prohibition limits the Railroad's reservation of rights under the contract.

### Paragraph Ten

The Railroad also challenges the trial court's grant of summary judgment in favor of Colonial on the issue of attorney's fees and court costs. It contends that paragraph ten requires Colonial to "indemnify and save harmless [the Railroad] from and against all claims [and] suits," including the instant one. We find no error in the trial court's conclusion that this provision applies only to suits brought by third parties. Indeed, application of this indemnity provision to a contract dispute between the contracting parties would yield an absurd result. *Eatherly Const. Co. v. HTI Mem'l Hosp.*, No. M2003–02313–COA–R3–CV, 2005 WL 2217078, at *10–11 (Tenn.Ct.App. Sept.12, 2005)(*no perm. app. filed*). We accordingly affirm that portion of the trial court's judgment.

We hold that the trial court erred in granting summary judgment in favor of the Railroad on the issue of breach of contract. Paragraph one prohibits N & E from constructing mainline track along and directly over the pipeline. Although paragraph eight requires Colonial to bear the cost of most relocations, it does not encompass the specific situation in which the Railroad violates the placement prohibition of paragraph one. We accordingly reverse this portion of the trial court's judgment. Finding that the indemnity and hold harmless provisions in paragraph ten apply only to suits brought by third parties, we affirm that portion of the judgment denying the award of attorney's fees to the Railroad. We accordingly affirm in part, reverse in part, and remand for an award of damages and entry of judgment in favor of Colonial Pipeline Company. Costs of this appeal are taxed to the Nashville & Eastern Railroad Corporation, for which execution shall issue if necessary.