IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 2, 2010 Session

# WELLMONT HEALTH SYSTEM v. JOHN QUINTON QUALLS, ET AL.

**Appeal from the Circuit Court for Sullivan County**
**No. C36551(B)      R. Jerry Beck, Judge**

**No. E2009-00918-COA-R3-CV - FILED AUGUST 20, 2010**

Plaintiff hospital filed a lawsuit against defendant patient for unpaid medical expenses. Defendant patient filed a third party complaint against defendant insurance company alleging that the insurance company was responsible for the unpaid medical expenses pursuant to a health insurance policy. After a bench trial, the trial court concluded that the insurance contract was ambiguous and construed it against the defendant insurance company. Defendant insurance company appeals. After reviewing the record and the health insurance policy, we conclude that the policy was not ambiguous and the insurance contract specifically excluded coverage of patient's pre-existing condition. Accordingly, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Bradley E. Griffith, Johnson City, Tennessee, for the appellants, Blue Cross Blue Shield of Tennessee and Tennessee Rural Health Improvement Association.

David W. Blakenship, Kingsport, Tennessee, for the appellees, John Quinton Qualls and Sarah E. Qualls.[1]

## OPINION

## I.  FACTUAL BACKGROUND

---

[1] In the record, there is testimony that Sarah Qualls' middle initial is "S" and not "E." We use the middle initial of "E" because it is the name designated on the technical record.

John Qualls received healthcare services from Wellmont Holston Valley Medical Center ("Wellmont"). Mr. Qualls was admitted to Wellmont on March 14, 2004, and underwent surgery for problems related to diverticulitis. At the time of the surgery, Mr. Qualls had a health insurance policy through the Tennessee Rural Health Improvement Association ("TRH"), a plan administered by Blue Cross Blue Shield of Tennessee ("BCBS").

The TRH policy at issue included a Benefit Exclusion Rider ("the Rider") that was stapled to the inside front cover of the contract. The Rider excluded health insurance coverage for diverticulitis. The health insurance policy had two red stamps appearing on the front cover of the policy. The two stamps highlighted the 12-month waiting period for pre-existing conditions and that the Rider was attached to the policy. Around the time of Mr. Qualls' hospitalization, he received a letter from BCBS authorizing treatment for diverticulitis, dated March 16, 2004 ("Prior Authorization Letter"). Because of the stamps and the Prior Authorization Letter, Mr. Qualls claims that he believed that BCBS would cover the expenses related to his treatment for diverticulitis.

After failed attempts to collect the unpaid medical expenses for the surgery, Wellmont initiated a lawsuit against Mr. and Mrs. Qualls. The Quallses filed an Answer, alleging that BCBS was liable for the amount because of the insurance contract with BCBS. The Quallses then filed a third-party complaint against BCBS alleging that the insurer was liable for any money owed to Wellmont.

Thereafter, a bench trial occurred. It was stipulated by the parties that the medical expenses in question totaled $26,514.48. Wendall L. Skinner, M.D., the surgeon that operated on Mr. Qualls at Wellmont, testified in his deposition that Mr. Qualls' problems leading to the surgery were caused by diverticulitis and that the surgery was needed immediately.

Craig Norris, Vice President of Operations at TRH, testified that the two stamps, the pre-existing condition notice and the Rider notice, were not related, but were two separate issues addressed separately within the insurance contract. Mr. Norris testified that the general language involving pre-existing conditions did not apply to diverticulitis as it was specifically excepted from the policy in the Rider.

Jada Hicks, Manager of Underwriting at TRH, testified that the Rider specifically excluded payment of any expenses for diverticulitis for the life of the insurance contract. Ms. Hicks also testified that TRH never removed or waived the Rider.

At the conclusion of the trial, the trial court determined that ambiguity existed in the

insurance contract due to the two stamps on the front cover of the contract. Because of the ambiguity, the trial court construed the insurance contract against BCBS and held that the insurer was liable for the unpaid medical expenses. This appeal ensued.

## II.  ISSUE PRESENTED

The sole issue on appeal is whether the trial court erred in construing the insurance contract against the insurance carrier after finding that the insurance contract was ambiguous.

## III.  STANDARD OF REVIEW

The standard of review for a non-jury case is de novo upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995); *Colonial Pipeline Co. v. Nashville & Eastern R.R. Co.*, 253 S.W.3d 616, 620 (Tenn. Ct. App. 2007). The factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). With respect to legal issues, this court's review is conducted under a pure de novo standard of review. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

The interpretation of a contract is a matter of law requiring de novo review on appeal. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Therefore, "a trial court's interpretation of a contract is not entitled to a presumption of correctness under Tenn. R. App. 13(d) on appeal." *Angus v. W. Heritage Ins. Co.*, 48 S.W.3d 728, 739 (Tenn. Ct. App. 2000).

## IV.  DISCUSSION

This case involves the interpretation of a health insurance contract. Generally, the rules of contract construction apply to insurance contracts. *Tenn. Farmers Mut. Ins. Co. v. Witt*, 857 S.W.2d 26, 32 (Tenn. 1993); *Snow-Koledoye v. Horace Mann Ins. Co.*, No. M2000-02954-COA-R3-CV, 2002 WL 225893, at *4 (Tenn. Ct. App. M.S., Feb. 14, 2002). Insurance contracts should be construed so as to give effect to the intention and express language of the parties. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). "In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning." *Snow-Koledoye*, 2002 WL 225893, at *4; *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992). A court must first determine whether the language in the contract is ambiguous. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). Where the language in an insurance contract is susceptible

of more than one reasonable interpretation, it is ambiguous. *Tata*, 848 S.W.2d at 650 (citing *Moss v. Golden Rule Life Ins. Co.*, 724 S.W.2d 367, 368 (Tenn. Ct. App. 1986)). If this court attempts to determine the intent of the parties and finds ambiguity in the language of the insurance contract, we resolve "any ambiguity and doubt in favor of the insured" because the insurance company drafted the policy. *Snow-Koledoye*, 2002 WL 225893, at *4 (citation omitted).

Nevertheless, if the language in a contract is plain and unambiguous, courts then "determine the parties' intention from the four corners of the contract, interpreting and enforcing [the contract] as written." *Union Realty Co. v. Family Dollar Stores of Tenn., Inc.*, 255 S.W.3d 586, 591 (Tenn. Ct. App. 2007) (citing *Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000). If the language is clear and unambiguous, "the literal interpretation of the language controls the outcome of the contract disputes." *Planters Gin Co.*, 78 S.W.3d at 890. We construe all provisions of a contract in harmony with each other, "if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract." *Rainey*, 836 S.W.2d at 119.

In the case at bar, the portions of the contract at issue are the Rider and the two stamps appearing on the front cover of the policy. The Rider was issued with the policy manual, and it was stapled to the inside front cover of the policy. The Rider provides, as follows:

**BENEFIT EXCLUSION RIDER**

John Q Qualls
691 XXXXXXXX XX
Kingsport TN 37664

Group No.: XXXXX
Sub Group: XXXX
Identification No.: XXXXXXXXX
Effective Date: 3-1-03

THIS RIDER FORMS A PART OF THE ABOVE FARM BUREAU CERTIFICATE.

In addition to the exclusions set forth elsewhere in your Farm Bureau Certificate, benefits will not be provided for JOHN Q QUALLS, for any expenses arising in any way as a result of the medical condition(s) indicated:

Medical Condition(s): Diverticulitis

The coverage under your Farm Bureau Certificate is effective only if you accept the terms of this Rider. By paying premiums or accepting benefits under this coverage, you agree to the terms and conditions of your Farm Bureau Certificate and this Rider.

The terms of this Rider apply to Farm Bureau certificates, which may be issued at a later date to replace the above Farm Bureau certificate. The terms of this rider are part of this certificate for the life of this contract unless removed by a medical review process and may not be changed or waived except in writing by an authorized representative of Blue Cross Blue Shield of Tennessee as set forth in your Farm Bureau Certificate.

On the front cover of the policy, two red stamps appear. One red stamp reads: "Pre-Existing Waiting Period - 12 months." The other red stamp states:

BENEFIT EXCLUSION RIDER ATTACHED
If Rider is Not Attached, Please Notify Your Local Tennessee Rural Health Representative Immediately

At trial, Mr. Qualls testified that at the time he obtained the policy, he revealed two pre-existing conditions – a knee problem and diverticulitis. Mr. Qualls further testified that he understood the stamp to mean that there was a 12-month waiting period for all his pre-existing conditions and that his pre-existing conditions would be covered by the policy after twelve months.

Employing a reasonable person standard, the trial court found that the stamps could lead to the conclusion that the 12-month waiting period applied to all of Mr. Qualls' pre-existing conditions. Specifically, the trial court held that ambiguity existed in the policy because the Rider's language conflicted with the red stamp appearing on the front cover of the policy. As a result, the court resolved the ambiguity in favor of Mr. Qualls and held that BCBS was liable for the unpaid medical expenses relating to Mr. Qualls' treatment for diverticulitis.

Benefit exclusion riders are fairly common in insurance contracts. As explained by our Supreme Court in *Brown v. Tenn. Auto Ins. Co.*, 237 S.W.2d 553 (Tenn. 1951),

It is well settled that riders or endorsements qualifying or restricting liability

of the insurer attached to the face of the policy contemporaneously with its issuance to the insured, constitute a part of the policy, where such riders or endorsements themselves provide that they are a part of the policy.

*Id.* at 554 (citation omitted). Further, a rider that "modifies or restricts the terms of the policy is controlling." *Id; see also Taylor v. State Farm Ins. Co.*, 775 S.W.2d 370, 371 (Tenn. Ct. App. 1989).

When interpreting a benefit exclusion rider, it is the court's job to fairly construe the language of the rider. This court addressed the issue of a benefit exclusion rider as it related to an automobile accident in *Taylor v. State Farm Ins. Co. See* 775 S.W.2d at 371-72. Noting the general rule in construing benefit exclusion riders, this court stated:

Where there is no ambiguity, it is the duty of the Court to apply to the words used their ordinary meaning and neither party is to be favored in their construction. The well recognized rule of construing language of an insurance policy most strongly against the insurance company does not permit or cause the Court to create ambiguity where none exists.

\*\*\*

Exclusionary clauses are not to be construed broadly in favor of the insurer. . . . However, neither should they be construed so narrowly so as to defeat their evident purpose.

*Id.* at 372 (citations omitted).

In the instant case, after reviewing the Rider and the health insurance policy as a whole, it becomes evident that Mr. Qualls' pre-existing condition of diverticulitis was excluded from coverage under the policy. *See Rogers v. Blue Cross and Blue Shield of Tennessee*, No. 03A01-9211-CV-00418, 1993 WL 86938, at \*2 (Tenn. Ct. App. E.S., Mar. 25, 1993) (affirming dismissal of insured's claim for unpaid medical expenses when the benefit exclusion rider precluded coverage for specified pre-existing condition). While we acknowledge that the red stamp noting the 12-month waiting period for pre-existing conditions may have caused some confusion in Mr. Qualls' understanding of the policy, a straightforward reading of the Rider leaves no room for interpretation. From the language of the Rider, it is clear that coverage for diveritculitis is not included; there is no ambiguity in the express words of the Rider. Further, if one reads the Rider in harmony with the two red stamps on the front cover of the policy, one natural conclusion follows: the health insurance policy will not cover the costs related to the treatment of diverticulitis. *See*

*Guilano*, 995 S.W.2d at 95 (explaining that contract provisions "should be construed in harmony with each other" in order to "promote consistency and to avoid repugnancy between the various provisions of a single contract."); *see also Rainey*, 836 S.W.2d at 119.

Mr. Qualls claims that the stamp caused ambiguity by contradicting the Rider's language that disqualified diverticulitis from coverage. He further argues that the Prior Authorization Letter, which approved his inpatient hospitalization and surgery in March 2004, supported his belief that diverticulitis was covered after the 12-month waiting period. Although Mr. Qualls interpreted the policy in such a way, his argument fails under the weight of the Rider's clear and plain language that states otherwise. The Rider provides that the exclusion of diverticulitis from coverage remains in effect for "the life of the contract." The exclusion would terminate only if "removed by a medical review process and may not be changed or waived except in writing by an authorized representative" of BCBS. From this language, it appears that the red stamp did not affect the blatant exclusion of coverage for diverticulitis. In fact, without an explicit waiver from BCBS, the Rider was in effect when Mr. Qualls received treatment for diverticulitis. Even though the Prior Authorization Letter authorized Mr. Qualls' treatment, the letter also made clear that coverage of treatment was not guaranteed. Specifically, the Prior Authorization Letter states:

> This authorization is subject to verification of all medical information. It is valid only if such information is accurate and complete. The authorization is not a confirmation of coverage or approval of benefits. Payment of benefits remains subject to all contract terms, conditions and exclusions. Payment also depends on the patient's eligibility for benefits at the time services are rendered.

Considering the language of the Rider and the Prior Authorization Letter, Mr. Qualls' argument that he reasonably believed that he had coverage for treatment of diverticulitis cannot prevail. At trial, he admitted on cross examination that he failed to read the Prior Authorization Letter in its entirety. Nevertheless, the Prior Authorization Letter does not aid Mr. Qualls' insistence that ambiguity existed in the policy because the letter did not guarantee coverage for Mr. Qualls' treatment. Reading the Rider and the Prior Authorization Letter together makes clear that Mr. Quall's treatment for diverticulitis was not included in the insurance policy and BCBS is not responsible for the expenses related to such treatment.

Even though Mr. Qualls interpreted the stamp and the Rider to mean that coverage extended to diverticulitis, we decline to find that his interpretation relieves him of responsibility for the unpaid medical expenses owed to Wellmont. Poor interpretation on behalf of either or both parties does not create ambiguity where none exists. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001) (explaining that "'A contract is ambiguous only

when it is of uncertain meaning and may be fairly understood in more ways than one.'") (citation omitted). Therefore, we conclude that the red stamp noting the waiting period for pre-existing conditions does not override nor contradict the Rider's express words excluding diverticulitis for the life of the contract. Even assuming that the red stamp conflicts with the Rider, our conclusion remains unaffected because as this court has previously stated:

> As a general rule the provisions of a rider or endorsement on a policy of insurance will take precedence over the conflicting terms of the initial policy.

*Hamill v. Nationwide Mut. Ins. Co.*, 499 S.W.2d 892, 898 (Tenn. Ct. App. 1972) (citation omitted).

As such, the trial court erred in finding that ambiguity existed in the insurance contract and in holding BCBS liable for the unpaid medical expenses to Wellmont. The explicit language of the Rider excludes coverage for the treatment of diverticulitis; the red stamp appearing on the policy's front cover and the Prior Authorization letter fail to change the Rider's exclusion of diverticulitis. Accordingly, we reverse.

## V. CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court. We find that the Rider issued with the health insurance policy excluded coverage for diverticulitis. Blue Cross Blue Shield of Tennessee is not responsible for the unpaid medical expenses relating to the treatment of Mr. Qualls for diverticulitis. We remand for further proceedings consistent with this Opinion and collection of costs below. Costs are taxed to the appellees, John Quinton Qualls and Sarah E. Qualls.

_____
JOHN W. McCLARTY, JUDGE